UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CAMILLE SMITH, JERRY PROVINCE, SAMUEL
RAMOS, and JOSE MORALES, suing on behalf of          :
themselves and all others similarly situated,

                                                                  :

                          Plaintiffs,
           -against-                                                 :          08 Civ. 3313 (SHS)

DAVID PATERSON; BRIAN FISCHER; GLENN          :
GOORD; RICHARD DeSIMONE; and
JOHN DOES, Nos. 1-150 (members of the New York     :
State Department of Correctional Services whose names
are presently unknown to plaintiff),                         :

                                                                    :

                       Defendants.
------------------------------------------------------------------------X

### AFFIRMATION OF ANDREW H. MEIER

_____ANDREW H. MEIER declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that

the following is true and correct:

     1.     I am an Assistant Attorney General in the Office of ANDREW CUOMO, Attorney

General of the State of New York.  This office regularly represents the New York State Department

of Correctional Services ("DOCS") and its employees in state and federal court proceedings.

     2.    Defendant Richard DeSimone was served with the Summons and Complaint on April

18, 2008, he has not been served with the Order to Show Cause or any of the other documents that

Plaintiffs have filed in support of the Temporary Restraining Order.  I do not know if any of the other

Defendants have been served.  None of the Defendants have requested representation, pursuant to

the Public Officers Law of New York State.  Therefore this office cannot purport to represent the

Defendants in the instant litigation, cannot accept service on their behalf, and cannot waive any

defenses the Defendants may have, including lack of personal jurisdiction.

     3.    Plaintiff  Camille Smith was convicted in 2001 of Attempted Assault in the First

Degree (a Class C felony) and was sentenced to a 3 ½ year determinate prison term.  Smith was released from Bedford Hills Correctional Facility to postrelease supervision and was subsequently returned to DOCS custody on December 17, 2007 for violating the conditions of her release.  On January 15, 2008, Smith obtained an order, from the New York State Supreme Court, nullifying her postrelease supervision and she was re-released from DOCS custody on January 16,2008.

4.      Plaintiff Jerry Province was convicted in 1999 of two counts of Burglary in the Second Degree (a Class C felony) and was sentenced to a determinate 4 year prison term.  Province was released from Green Haven Correctional Facility to postrelease supervision and was subsequently returned to DOCS custody on August 17, 2006 for violating the conditions of his release.  On October 18, 2007, Province obtained an order, from the New York State Supreme Court, nullifying his postrelease supervision and he was re-released from DOCS custody on October 25, 2007.

5.      Plaintiff Samuel Ramos was convicted in 2001 of Robbery in the First Degree (a Class B felony) and was sentenced to a determinate 5 year prison term.  Ramos was released from prison on September 17, 2004, but was returned to DOCS custody on three occasions for violations of the conditions of his release.  On December 11, 2007, Ramos obtained an order, from the New York State Supreme Court, nullifying his postrelease supervision and he was subsequently released from DOCS custody.

4.      Plaintiff Jose Morales was convicted in 1999 of Attempted Robbery in the Second Degree (a Class D felony) and Attempted Criminal Sale of a Controlled Substance in the Third Degree (a Class C felony) and was sentenced to a 4 year prison term.  Morales was released from prison to postrelease supervision and was subsequently returned to DOCS custody on January 29, 2007 for violating the conditions of his release.  Morales was re-released to postrelease supervision on May 22, 2007, and was subsequently arrested for another violation of the terms of his release.  Morales is currently being held at Rikers Island Correctional Facility ("Rikers Island") pending a final parole revocation hearing.  Morales filed a petition for writ of habeas corpus in the Supreme

Court, Bronx County.  On April 16, 2008, the case was submitted to the Honorable Darcel D. Clark for a decision under Index No. 250436-08.  Morales is seeking to have his postrelease supervision declared a "nullity."  I represent the Division of Parole in the matter.

     5.    Any potential Plaintiff, seeking to challenge the imposition of postrelease supervision, has available state court remedies.  See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); People v. Hill, 9 N.Y.3d 189 (2007); People v. Boyd, __ A.D. __ (1st Dept. April 17, 2008) (attached hereto as Exhibit A); See also Inman v. Harder, 2007 U.S. Dist. LEXIS 45260 (N.D.N.Y. 2007).

     6.    On March 12, 2008, the Court of Appeals heard argument in a number of cases that will have direct bearing on the merits of the instant litigation as they will resolve the issue of whether a trial court's failure to expressly impose a period of postrelease supervision as part of a sentence pronounced in open court renders that component of the sentence invalid.  See Garner v. N.Y.S. Dept. Of Correctional Services, 39 A.D.3d 1019 (3d Dept. 2007), *lv granted*, 9 N.Y.3d 809 (2007); People v. Thomas, 35 A.D.3d 192 (1st Dept. 2006), *lv granted* 9 N.Y.3d 882 (2007); People v. Sparber, 34 A.D.3d 265 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 882 (2007); People v. Lingle, 34 A.D.3d 287 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 877 (2007).  A decision on these cases is expected to be issued soon.

Dated:  New York, New York

      April 18, 2008                 Respectfully submitted,

                    By:    s/ ANDREW MEIER

                          Andrew Meier (AM 0831)
                          Assistant Attorney General
                          120 Broadway - 24th Floor
                          New York, New York 10271
                          (212) 416-8305

**EXHIBIT A**

People v Boyd
2008 NY Slip Op 03402
Decided on April 17, 2008
Appellate Division, First Department
Tom, J.
Published by New York State Law Reporting Bureau pursuant to
Judiciary Law § 431.
This opinion is uncorrected and subject to revision before
publication in the Official Reports.


Decided on April 17, 2008
SUPREME COURT, APPELLATE DIVISION
First Judicial Department
Peter Tom,J.P.
David Friedman
Milton L. Williams
James M. McGuire, JJ.
6523/03

2252 6697/03


[*1]The People of the State of New York, Respondent,


v


Paul Boyd, Defendant-Appellant.



Defendant appeals from judgments of the Supreme Court, New York

County (Philip M. Grella, J.), rendered September 21, 2004, each

convicting him, upon his plea of guilty, of robbery in the first

degree, and imposing sentence.



Dominic J. Sichenzia, Carle Place, for appellant.

Robert M. Morgenthau, District Attorney, New York

(David M. Cohn of counsel),

for respondent.

TOM, J.P.

At issue on this appeal is whether acceptance of defendant's guilty plea in exchange for a negotiated determinate sentence without advising him of the duration of the period of postrelease supervision to be imposed or the permissible statutory range for the period of such supervision deprived him of the ability "to knowingly, voluntarily and intelligently choose among alternative courses of action" so as to require reversal of the judgment of conviction (People v Catu, 4 NY3d [*2]242, 245 [2005]). Under the particular facts of this matter, this Court concludes that merely telling defendant "there is a postrelease supervision that's mandatory," without further explanation, was insufficient to accord him due process (see id.).

Under separate indictments, defendant was charged with a total of four counts of robbery in the first and second degrees. He entered a plea of guilty to two counts of first degree robbery in full satisfaction of the indictments and waived his right to appeal in return for concurrent determinate sentences of 12 years

on each count. At plea, the court specifically found that
defendant was not a predicate felony offender. After the
allocution, the prosecutor asked if the court had mentioned
postrelease supervision. The court responded:

I don't, because it's mandatory. Okay. Do you understand that
there is a postrelease supervision that's mandatory?

Defendant simply answered "Yes," and the court thereupon accepted
his plea.

Although defendant was sentenced in accordance with the plea
agreement, the court did not impose a period of postrelease
supervision to follow the determinate prison term. By statute, a
defendant who is not a predicate felony offender is subject to
mandatory postrelease supervision ranging from 2½; to 5 years, at
the court's discretion (Penal Law § 70.45[2][f]).

On appeal, defendant contends that the court violated his due
process rights by failing to apprise him of the range of the
mandatory period of postrelease supervision and the duration of
supervision to which he is subject. He requests that this Court
reverse his conviction and vacate the pleas.

In response, the People argue that the trial court afforded
defendant due process by advising him that postrelease

supervision is mandatory and that, in any event, defendant's failure to immediately state an objection or move to vacate the pleas renders any error unpreserved. However, we note that the duration of postrelease supervision was neither pronounced at sentence nor otherwise entered on the court's records (cf. People v Lingle, 34 AD3d 287 [2006], lv granted 9 NY3d 877 [2007]), and by requesting that the matter be remitted so that postrelease supervision may be added to defendant's sentence for such period of time as Supreme Court determines, in its discretion, the People implicitly concede the illegality of the sentence.

The particular question confronting this Court is whether a defendant contemplating entry of a guilty plea can knowingly and intelligently choose among available alternatives without knowing the duration of postrelease supervision to which he is subject upon his release from incarceration or even the limits imposed by statute on that period of supervision. We answer this question in the negative. If postrelease supervision, like incarceration, is a significant component of sentence (see Catu, 4 NY3d at 245), then the duration of supervision and its relationship to the range provided by statute are likewise material to a defendant's ability to intelligently choose among alternative courses of action (see People v Van Deusen, 7 NY3d 744 [2006]). Conceptually, if the postrelease supervision component of a sentence is "significant" (Catu, 4 NY3d at 245), then it is no more reasonable to conclude that a knowing and voluntary choice among available alternatives can be made in the absence of

knowledge of the length of the period of supervision than to conclude that due process is served merely by informing a defendant that [*3]he will be subject to incarceration without disclosing its duration. In addition, the statutory provision for a discretionary period of postrelease supervision presents a defendant with the opportunity to negotiate between the time to be spent under supervision and the time to be served in confinement.

The People contend that the length of postrelease supervision is "clearly delineated in the Penal Law, of which defendant had constructive notice." They further speculate that "counsel surely understood the [postrelease supervision] rule and defendant averred that he had discussed the plea bargain with counsel." Thus, they argue, the record "provides no basis to conclude that defendant misunderstood the length of the term."

This argument is disingenuous. First, defendant could not possibly understand the length of a term of postrelease supervision that, as the People concede, has yet to be imposed on remand. Since the period of supervision is discretionary within the statutory range, it is reasonable to expect that if the parties had been aware of it in the course of plea negotiations, the duration of the period of supervision would have been specified in the plea agreement along with the period of incarceration.

Second, "due process requires that the record must be clear that 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant'" (People v Ford, 86 NY2d 397, 403 [1995], quoting North Carolina v Alford, 400 US 25, 31 [1970]). Thus, the operative question is whether the record establishes that defendant understood the plea (see People v Parilla, 8 NY3d 654, 660 [2007]), not whether defendant can demonstrate that he misunderstood its terms. The Court of Appeals has recently made it quite clear that the question is not subject to harmless error analysis (People v Hill, 9 NY3d 189 [2007], revg 39 AD3d 1 [2007]; see also Van Deusen, 7 NY3d at 746 [whether defendant would have declined to plead guilty had he known about postrelease supervision not material]).

The People argue that this matter must be remitted to Supreme Court for imposition of a period of postrelease supervision (Penal Law § 70.45[2][f]). Whatever the duration the court might decide upon, the sentence would suffer from the same infirmity identified in People v Goss (286 AD2d 180, 184 [2001]): the defendant may not be said to have knowingly agreed to the period of postrelease supervision to follow his determinate sentence (see Hill, 9 NY3d at 192). Even if the court were to reduce the term of incarceration by the same duration so that the total period of incarceration plus postrelease supervision is no greater than the 12-year sentence originally agreed upon, it would not render the plea knowing and voluntary (see id.; Van Deusen, 7 NY3d at 746).[FN1]

There is no merit to the People's contention that defendant
failed to preserve any objection to the court's allocution by
immediately registering a protest or moving to vacate the plea
agreement. While such a challenge must ordinarily be preserved by
a motion to withdraw [*4]the plea under CPL 220.60(3), this does
not apply "where a trial judge does not fulfill the obligation to
advise a defendant of postrelease supervision during the plea
allocution" (People v Louree, 8 NY3d 541, 545-546 [2007]).
Implicit in this rule is that the trial judge must fully advise a
defendant of the terms of postrelease supervision so as to permit
a knowing and intelligent choice to be made among alternative
courses of action. As a matter of due process, "[a] trial court
has the constitutional duty to ensure that a defendant, before
pleading guilty, has a full understanding of what the plea
connotes and its consequences" (Ford, 86 NY2d at 402-403).
Without knowledge of the period of postrelease supervision, it
was simply not possible for defendant herein to possess the full
understanding necessary to an informed plea.

Though the prosecutor directed the court's attention to this
problem during allocution, the court nevertheless failed to
advise defendant of the duration of postrelease supervision.
Defendant should not be penalized for the court's failure to
fulfill its constitutional burden before entering a plea. To rule
otherwise would shift the court's allocution obligations to
defendant. The duty to make sure the record establishes that the
defendant's plea represents a voluntary and intelligent choice

among his available alternatives is imposed on the court, not on the defendant (Louree, 8 NY3d at 545). It is dispositive that the record fails to establish that defendant was made aware of either the statutory range of the period of postrelease supervision or the particular period to which he would be subjected (see Goss, 286 AD2d at 184 [counsel's knowledge of plea agreement components not attributable to defendant]). Thus, defendant may challenge the sufficiency of the allocution on direct appeal.

A contrary holding would pose an insurmountable dilemma, for if a defendant was misinformed concerning postrelease supervision, he could hardly be expected to withdraw his plea until he received accurate information; and if definitive information was not imparted until sentence was pronounced, the defendant would be precluded from withdrawing his plea because a motion under CPL 220.60(3) is only available before sentencing (id.). Here, it appears that the parties and the Court may have proceeded under the misconception that the period of postrelease supervision was mandated by statute. The statement, "there is a postrelease supervision that's mandatory," without further elaboration or action on the part of the court, suggests the belief that it had no discretion with respect to the statutory period of postrelease supervision to be imposed. The court's failure to provide for it in any written document and the absence of any motion by the People to set aside the sentence only bolsters the impression that postrelease supervision was regarded by all concerned as an automatic component of the sentence requiring no action on the

court's part (cf. Lingle, 34 AD3d at 289). However, regardless of whether the period of postrelease supervision was mandatory or discretionary, the court was obligated to inform defendant of the specific period of supervision. Where, as here, the omission complained of is apparent from the face of the record, the defendant is required to assert the issue on appeal, not by way of motion under CPL 440 (Louree, 8 NY3d at 545-546).

The People's attempt to shift onto defendant the burden to demonstrate that his constitutional rights were not preserved also fails. What counsel might have known about the permissible duration of postrelease supervision is neither pertinent to the determination of this appeal nor discernible from the record. Once again, the obligation to see that a defendant's due [*5]process rights are protected rests on the court accepting a guilty plea, not on counsel.

In view of the evident omissions by the court and by the People in this matter resulting in defendant's incomplete understanding of the implications of entering a guilty plea and the need to correct an illegal sentence, the appropriate course is to permit defendant to withdraw his plea and restore the parties to their status before the plea agreement was reached (see People v Reyes, 167 AD2d 920, 921 [1990], lv denied 77 NY2d 842 [1991]).

We reject any need to delay decision of what is, apparently, a matter of first impression. The cases cited by the dissenter,

which are awaiting decision by the Court of Appeals, are
distinguishable by their procedural context and, significantly,
by the lack of any discretion on the part of the trial court as
to the period of postrelease supervision to be imposed.

Accordingly, the judgments of the Supreme Court, New York County
(Philip M. Grella, J.), rendered September 21, 2004, each
convicting defendant, upon his plea of guilty, of robbery in the
first degree, and sentencing him to concurrent terms of 12 years,
should be reversed, on the law, the pleas vacated, the full
indictment reinstated, and the matter remitted for further
proceedings.

    All concur except McGuire, J. who dissents in an Opinion.

McGUIRE, J. (dissenting)

I respectfully dissent as I disagree with the majority in two
respects. First, in my view, the Catu claim (People v Catu, 4
NY3d 242 [2005]) is not preserved for review. Second, the prudent
step for this Court to take is to defer decision on defendant's
appeal until after the Court of Appeals decides the quartet of
cases, including three cases from this Court, raising claims
under and issues relating to Catu that were heard on March 12,
2008: People v Sparber, 34 AD3d 265 (2006), lv granted 9 NY3d 882
(2007); People v Lingle, 34 AD3d 287 (2006), lv granted 9 NY3d

877 (2007); People v Thomas, 35 AD3d 192 (2006), lv granted 9 NY3d 882 (2007); and Matter of Garner v New York State Dept. of Correctional Servs., 39 AD3d 1019 (3d Dept 2007), lv granted 9 NY3d 809 (2007).

As to preservation, People v Lopez (71 NY2d 662, 665-666 [1988]) holds that to preserve a challenge to the sufficiency of a plea allocution a defendant must either move to vacate the plea prior to the imposition of sentence pursuant to CPL 220.60(3) or move to vacate the judgment pursuant to CPL 440.10. That preservation requirement is excused only in the "rare case" where the allocution "clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea" (id. at 666).

The first of these exceptions is not implicated here and thus the issue is whether the second exception applies. The argument that it does apply is grounded on the fact that the court did not expressly specify during the plea allocution that as a first-time violent felony offender, [*6]defendant would be subject to a period of postrelease supervision of not less than two and one-half years and not more than five years (Penal Law 70.45[2][f]). Preservation was not at issue in People v Hill (9 NY3d 189 [2007]), and thus that recent decision does not resolve the preservation issue. In concluding that the defendant's plea had to be vacated because he did not possess the "requisite information knowingly to waive his rights," however, the Court

stated that "at the time of his plea, defendant was not informed that a period of postrelease supervision would follow his term of incarceration" (id. at 192 [emphasis added]). Thus, the Court did not rely on the fact that the defendant was not informed of the particular period of postrelease supervision that would follow. Similarly, People v Catu also seems to stress the failure to apprise the defendant at the time of the plea of the fact of rather than the particulars of the mandatory period of postrelease supervision (Catu, 4 NY3d at 245 ["[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction"]; see also People v Van Deusen, 7 NY3d 744, 746 [2006] ["[a]t the time defendant pleaded guilty, she did not possess all the information necessary for an informed choice ... because she was not told that she would be subject to mandatory postrelease supervision as a consequence of her guilty plea"]).

On this score, in short, no decision of the Court of Appeals holds that a Catu claim is established so as to render a guilty plea involuntary when the defendant is informed by the court at the time of the guilty plea that a period of postrelease supervision is required, but is not informed of the particular term or range of terms that is required [FN2]. However, a decision of the Court of Appeals (People v Louree, 8 NY3d 541,

544-546 [2007]) and this Court's decision in Thomas (supra)
support the People's position that defendant failed to preserve
his Catu claim.

During the plea allocution in Louree, "[t]he judge did not
mention that a period of postrelease supervision would follow
either the conditionally promised two-year or a potential
seven-year sentence" (8 NY3d at 543). At sentencing, the court
stated that the sentence included a five-year period of
postrelease supervision and the Court of Appeals rejected the
People's contention that the Catu claim was not preserved for
review. After noting the rare-case exception discussed in Lopez
(supra) the Court held that the exception was applicable when "a
trial judge does not fulfill the obligation to advise a defendant
of postrelease supervision during [*7]the plea allocution" (8
NY3d at 545-546)[FN3]. In explaining this holding, the Court
stressed that "[i]f the trial judge does not mention postrelease
supervision at the allocution, as happened here, a defendant can
hardly be expected to move to withdraw his plea on a ground of
which he has no knowledge" (id. at 546).

Here, of course, precisely the opposite is true. That is, the
judge did more than "mention" postrelease supervision, the judge
specifically stated that "it's mandatory" and elicited from
defendant an affirmative answer to the express question, "[d]o
you understand that there is a postrelease supervision that is
mandatory?" Given that he unquestionably did have knowledge of

this ground for moving to withdraw his plea, defendant certainly could be expected to move to withdraw his plea on this very ground. To conclude that defendant's claim is preserved, moreover, would undercut central purposes of the requirement of a specific and contemporaneous objection: promoting finality and preventing the waste of public resources through the timely correction of errors (see People v Dekle, 56 NY2d 835, 837 [1982]; see also People v Lopez, 71 NY2d at 665-666 [by not moving to withdraw or vacate his guilty plea on the ground that the allocution was insufficient, the defendant "denies the trial court the opportunity to address the perceived error and to take corrective measures, if needed"]).

In Thomas, this Court made essentially this same point in concluding that a similar albeit not identical Catu claim was not preserved. The only difference between Thomas and this case is that in Thomas the court stated at the plea allocution what the term of the period of postrelease supervision would be (35 AD3d at 193). In rejecting the defendant's argument that his Catu claim "was incapable of being preserved" (id.), the panel in Thomas said the following:

"On the contrary, this procedural defect in the

sentence could easily have been corrected upon

timely objection.... When, at sentencing, the

court mentioned the statutory fees but neglected to mention [postrelease supervision], defendant remained silent, but now seeks to be relieved of [postrelease supervision] as a windfall to be derived from the court's omission. Accordingly, we decline to reach this unpreserved issue in the interest of justice. To hold otherwise is to encourage gamesmanship ...' (People v Dekle, 56 NY2d [at] 837 ...)" (35 AD3d at 193 [citation omitted after first ellipsis]).

The majority does not even attempt to explain why the Catu claim in Thomas was unpreserved but defendant's Catu claim is preserved. I respectfully submit that there is no [*8]convincing explanation [FN4]. The majority certainly encourages gamesmanship. Defendant (and his attorney) unquestionably knew no later than the plea proceeding that postrelease supervision was mandatory. After expressly stating at the plea proceeding that he understood that, defendant did not thereafter — neither during the plea proceeding nor sentencing — utter so much as a peep about postrelease supervision. Yet the majority now allows defendant, more than three and one-half years after he freely pleaded guilty when the People's case may have weakened due to the passage of time, to get his guilty plea vacated on the strength of his claim that he did not understand the postrelease supervision component of his plea. As the Court of Appeals stated in Dekle with respect to its holding that the alleged error was unpreserved, "[t]o hold otherwise is to encourage gamesmanship and waste judicial resources in order to protect a defendant

against a claimed error protection against which requires no more than a specific objection on his part" (56 NY2d at 837).

As noted, Thomas was heard by the Court of Appeals on March 12. Given the dispatch with which the Court of Appeals typically acts, a decision can be expected by not much more than a month after Thomas is heard. At the very least, the guidance that will be provided by the Court's resolution of the preservation issue in Thomas would be valuable to this Court in resolving the similar but not identical preservation issue in this case. Indeed, the decision in Thomas could be virtually or even actually dispositive of the preservation issue in this case.

The majority does not disagree with any of this but nonetheless decides this significant issue without waiting for the decision in Thomas. The majority may believe there is no or negligible uncertainty about whether or not defendant's Catu claim is preserved. If so, the majority's confidence in its position is difficult to understand [FN5]. Alternatively, it may be that the majority believes that despite some uncertainty about the preservation issue, there is an urgent reason to resolve it now and, having resolved it in defendant's favor, to vacate his guilty plea. But that urgency is not only unstated, it is nonexistent. After all, during an otherwise impeccable plea allocution defendant freely admitted that he had committed two separate gunpoint robberies and agreed to accept a 12-year sentence on each crime. On this appeal, defendant raises only his

Catu claim. Accordingly, there is no reason to think — and the
majority does not suggest otherwise — that resolving this appeal
before Thomas is decided is critical to protecting defendant's
liberty interest.

Even assuming that defendant's Catu claim presents a question of
law for review because [*9]of the exception for the "rare case"
in which the allocution "calls into question the voluntariness of
the plea" (Lopez, 71 NY2d at 666), it would not follow
necessarily that defendant is correct on the merits of that
claim. To the contrary, it would not be unreasonable to conclude
that when a defendant unequivocally is informed during a plea
allocution that postrelease supervision is mandatory and
expressly states that he understands, he cannot plausibly contend
that the very particulars of the mandatory postrelease
supervision about which he never inquired at any time up to and
including sentence nonetheless were necessary "to knowingly,
voluntarily and intelligently choose among alternative courses of
action" (Catu, 4 NY3d at 245)[FN6]. On this question, too, the
decision in Thomas could be highly informative. I need not
resolve the question, however, as I can only conclude in the
absence of additional guidance from the Court of Appeals that
defendant's Catu claim is unpreserved.

For these reasons, I would reject defendant's Catu claim as
unpreserved and decline to review it in the interest of justice.
Although defendant argues only that his plea should be vacated,

other issues would have to be resolved if my position on the
preservation issue prevailed. They include: (1) whether the
court's failure to state a period of postrelease supervision
renders the sentence illegal, (2) whether the minimum permissible
period of the postrelease supervision mandated by the Legislature
(in this case, two and one-half years) should be deemed to have
been imposed as matter of law, (3) if not, whether this Court is
authorized or obligated to direct corrective action, either on
its own initiative or at the People's request, and (4) if so,
what the appropriate corrective action would be. As the majority
disagrees with me on the preservation issue and would vacate the
guilty plea on the merits, it would be pointless for me to
[*10]grapple with these issues. I note, moreover, that the Court
of Appeals will provide guidance on at least some of these issues
when it decides the four cases heard on March 12, 2008.


THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.


ENTERED: APRIL 17, 2008


CLERK
Footnotes



Footnote 1: A reduction in time served corresponding to the
period for which the defendant was to be subject to postrelease

supervision was exactly the ad hoc remedy implemented by the trial court in Hill (39 AD3d at 19 [Marlow, J., dissenting]).

Footnote 2:Even if the Court of Appeals were to hold that the defendant must be informed of the particular term or range of periods, it would not follow necessarily that the preservation exception applies whenever the defendant's Catu claim is valid on the merits. If it were so to apply, that would mean in essence that a Catu claim need not be preserved for review; a defendant could raise a Catu claim that must be reviewed as a matter of law whenever the defendant is correct on the merits of the claim.

Footnote 3:Thus, as it did in Catu, Van Deusen and Hill, the Court seemed to focus in Louree on the failure of the court to inform the defendant during the plea proceeding that the law required a period of postrelease supervision, as opposed to the particulars of that requirement.

Footnote 4:The majority's failure to distinguish Thomas is all the more puzzling given that two members of the majority were on the panel in Thomas.

Footnote 5:Those who follow this Court's criminal docket will find it hard to understand why other cases raising a variety of Catu claims and issues that are currently pending before this Court are not decided until after the Court of Appeals decides the quartetof cases heard on March 12.

Footnote 6:For essentially the same reasons, it would not be unreasonable to conclude that by pleading guilty under these circumstances defendant waived any claim concerning the sufficiency of the information imparted to him concerning postrelease supervision (see People v Iannone, 45 NY2d 589, 600 [1978] [defendants "waived their objections to the sufficiency of the factual allegations in the indictments" by pleading guilty]; see also id. [noting that "[a]lthough the questions of waiver and failure to preserve a question of law are conceptually severable, in the present case the dispositive considerations are the same"]).