UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CAMILLE SMITH, JERRY PROVINCE, SAMUEL
RAMOS, AND JOSE MORALES, suing on behalf          :
of themselves and all others similarly situated,

                                                                                   :

                                          Plaintiffs,

                  -against-                                              :          08 Civ. 3313 (SHS)

DAVID PATERSON, BRIAN FISCHER, GLENN          :
GOORD, RICHARD DESIMONE, and JOHN DOES
Nos. 1-150 (members of the New York State Department   :
of Correctional Services whose names are presently
unknown to plaintiff,                                              :

                                          Defendants.                  :
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF ABSTENTION

### PRELIMINARY STATEMENT

_____On behalf of all defendants, only one of whom has notified this Office that he has been

served,[1] the Office of Attorney General ANDREW M. CUOMO, submits this Memorandum of Law

in Opposition to Plaintiffs' Motion for Injunctive Relief.  This Office submits the Opposition on

behalf of all defendants in order to comply, in good faith, with the Court's scheduling orders, and

because it appears, based upon representations of plaintiffs' counsel, and our own investigation, that

plaintiffs are effecting service.  Nevertheless, at this time, no defendant has requested representation

from this Office, and pursuant to New York Public Officers Law Section 17, this Office is authorized

only to make a limited appearance, and thus reserves all rights defendants may have in connection

with the complaint and motion for injunctive relief. Assuming that service on defendants is effective,

so that the Court may entertain the application for injunctive relief (and particularly relief from

---

[1] This Office expects to represent defendants DAVID PATERSON, BRIAN FISCHER, GLENN GOORD, and RICHARD DE SIMONE, as well as any JOHN DOES 1-150 (collectively "Defendants") upon requests for representation.  Plaintiff's counsel informed this Office by telephone on April 18, 2008 that service was presently being made.

postrelease supervision), the Office of the Attorney General contends that the Court should deny injunctive relief to plaintiffs on grounds

– that any such application is moot, as to plaintiffs Smith, Province and Ramos, who have already been relieved of post-release supervision, and thus have no claim for injunctive relief; and

– that Morales and any other prospective plaintiff are not entitled to injunctive relief at this time as neither Morales nor any other member of a putative class meets his burden of showing that the complaint states a claim in this Court, and that even if it did, the claims are not ripe for review, as they belong in state court, or as federal habeas corpus claims, and

– that this Court, in any event, should abstain from hearing plaintiffs'(and particularly plaintiff Morales') claims in deference to proceedings in New York State courts.

This action, indistinguishable from Wesley Gabriel, et al., v. Brian Fischer, et al., pending before this Court, and likewise scheduled for a hearing on an injunction motion on May 9, 2008, is, like Gabriel, improperly brought as a Section 1983 action. To the extent that it seeks injunctive relief in the form of release from prison or release from parole supervision, United States Supreme Court precedent is clear that such relief should be pursued pursuant to habeas corpus statutes, and both the State and federal governments expressly provide for such relief. Moreover, this action, like Gabriel, has been inappropriately brought as a class action, as the plaintiffs named, and indeed the individuals in any prospective class, lack common characteristics sufficient to warrant or sustain a class of individuals. While plaintiffs in both actions seek different kinds of relief arising out of a challenge to "postrelease supervision," the actions themselves are not ripe for adjudication here based upon numerous theories,[2] and injunctive relief (all that is here being briefed) should be denied on diverse grounds, but particularly on grounds the complaint is not likely to succeed on the merits.

Plaintiffs challenge in both actions New York State's authority to supervise violent criminals

---

[2] Defendants reserve all defenses, including, without limitation, res judicata, collateral estoppel, the applicable statutes of limitations, and qualified immunity for such time as defendants are served and request representation from this Office and an answer or other response to the complaint is made.

and to protect its civilian population from recidivist predators. In response to a brutal crime committed by a parolee, the New York State Legislature, on August 6, 1998, enacted "Jenna's Law." Jenna's Law ended indeterminate sentences for criminal defendants convicted of violent felonies.[3] See New York Penal Law §70.02. Jenna's law also imposed a schedule of mandatory terms of parole postrelease supervision to be included as a part of the sentences of violent felony offenders. See NY Penal Law §70.45. Plaintiffs do not challenge the constitutionality of the statute, and they do not argue that the statute is not mandatory. Rather, plaintiffs argue that judicial error, as a matter of federal due process law, cannot be corrected and instead has the effect of liberating plaintiffs from mandatory sentencing laws. Accordingly, plaintiffs argue that DOCS should review the judiciary's work and not apply the postrelease supervision statute (calculate periods of parole supervision) if it appears that sentencing judges in New York State criminal courts have erred. Defendants contend that the United States Constitution does not authorize, let alone permit, a State administrative agency to act as an appellate tribunal over a state's judiciary.

Because of State judicial error, plaintiffs argue that parole supervision and any consequent terms of incarceration contemplated by the State legislature are unlawful. Rather than resorting to their sentencing courts to correct the errors, plaintiffs argue that the People of New York should bear the burden of the consequences of judicial error – lenient sentences – and consider postrelease supervision an across-the-board "nullity." Just yesterday, April 17, 2008, the Appellate Division, First Department, of the New York Supreme Court refused to consider postrelease supervision a "nullity" in a case where the statutory mandate was not pronounced as required. In People v. Boyd, Justice Tom held that in such a case, "the appropriate course is to permit defendant to withdraw his plea and restore the parties to their status before the plea agreement was reached." See People v. Boyd, attached to Affirmation of Andrew H. Meier, dated April 18, 2008, as Exhibit A. Defendants

---

[3] Jenna's Law was named for Jenna Grieshaber, a 22 year old nursing student who was murdered by a violent felon released from prison after serving only 2/3 of his sentence. The purpose of the law is to end indeterminate sentencing for violent felony offenders and to ensure that a fixed period of parole supervision applies to releasees re-adjusting to life outside of prison.

contend that the error requires correction, and as the First Department has held, the party complaining of a due process violation must return to the sentencing court, not resort to the federal courts to seek injunctive relief or money damages.

Essentially, the injunctive relief plaintiff Morales here seeks from this Court is an Order which would release plaintiff Morales (and other members of the class) from postrelease supervision, and other members of any prospective class from prison where they have been returned after a violation of parole. This relief – release from parole supervision or release from prison[4] – is really habeas corpus relief, not relief pursuant to 42 U.S.C. §1983, and thus the injunctive relief should be denied as inappropriate to the complaint. Plaintiffs still in need of injunctive relief should file habeas corpus proceedings in either the State or federal courts in the districts in which they are supervised or incarcerated (as did plaintiffs Smith, Province and Ramos herein).

Moreover, this Court should abstain from adjudicating plaintiffs' constitutional claims under the doctrines of <u>Younger</u> and <u>Pullman</u> and <u>Colorado River</u> abstention. Plaintiff Morales has a Statae habeas corpus petition pending in New York Supreme Court (Bronx County). Under the <u>Younger</u> and <u>Pullman</u> doctrines, this Court should abstain from exercising jurisdiction over this matter until the Supreme Court has decided the matter and all State appellate remedies have been exhausted. Alternatively, under the <u>Colorado River</u> doctrine, this Court should abstain until New York courts resolve State law questions on which any adjudication of constitutional principles depends.

## FACTS

Postrelease supervision is mandatory for criminal defendants, such as plaintiffs, sentenced to determinate sentences for violent felonies after September 1, 1998. <u>See</u> NY Penal Law §70.45. The New York State Court of Appeals has repeatedly held that postrelease supervision is a direct

---

[4] Plaintiffs purport to represent a class of inmates incarcerated solely on the basis of warrants issued pursuant to violations of the conditions of "administratively imposed" terms of postrelease supervision.

consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment." See People v. Catu, 4 N.Y.3d 242 (2005); People v. Van Deusen, 7 N.Y.3d 744 (2006); People v. Louree, 8 N.Y.3d 541 (2007); and People v. Hill, 9 N.Y.3d 189 (2007). In Hill, decided in November of 2007, the Court of Appeals did not treat postrelease supervision which went undocumented at sentencing to be "a nullity;" instead, the Court of Appeals directed that Hill return to his sentencing court for that court to correct the error. The Court of Appeals significantly also did not cite to Earley v. Murray, 451 F. 3d 71 (2d Cir. 2006), and was not compelled to address its applicability to the law governing criminal sentencing and procedure in New York, a body of law considered by both federal and State courts to be a province of the State.

Notwithstanding Hill, all four of this State's Appellate Divisions have held at one time or another that postrelease supervision is "a nullity" when it is neither pronounced by the sentencing judge nor recorded on the sentence and commitment sheet. See People v. Figueroa, 45 A.D.3d 297 (1st Dept. 2007); People v. Wilson, 37 A.D.3d 855 (2d Dept. 2007); Quinones v. Dept. of Correctional Services, 46 A.D.3d 1268 (3d Dept. 2007); People ex rel. Eaddy v. Goord, __ A.D.3d __ (4th Dept. 2008). These Appellate Division cases are all based on the Second Circuit's decision in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006), which held that postrelease supervision is "a nullity" unless it was expressly pronounced by the sentencing court. By the same token, all four of the State's Appellate Divisions had previously held to the contrary. Earley relied on now-superceded State precedent in its determination of a federal habeas corpus petition, where the State sentencing court would not permit correction of the sentence. Now that State courts permit corrections of the erroneous sentences, Earley should be confined to its own facts, and should not be considered controlling where criminal offenders have the right to return to the State courts for redress.

Indeed, on March 12, 2008, the Court of Appeals heard argument in a number of cases that will have direct bearing on the merits both of Earley and of the instant litigation. The cases heard will resolve the issue of whether a trial court's failure to expressly impose a period of postrelease supervision as part of a sentence pronounced in open court renders that component of the sentence

5

invalid, and whether any invalidity or other error must be corrected by remand to the sentencing court.  See Garner v. N.Y.S. Dept. of Correctional Services, 39 A.D.3d 1019 (3d Dept. 2007), *lv granted*, 9 N.Y.3d 809 (2007); People v. Thomas, 35 A.D.3d 192 (1st Dept. 2006), *lv granted* 9 N.Y.3d 882 (2007); People v. Sparber, 34 A.D.3d 265 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 882 (2007); People v. Lingle, 34 A.D.3d 287 (1st Dept. 2006), *lv granted*, 9 N.Y.3d 877 (2007). Plaintiffs' own convictions arguably will be affected by any decision from the Court of Appeals. Indeed, to the extent that the Court of Appeals should follow the lead suggested by Hill and Catu, and now by Boyd, the error in plaintiffs' own sentencings will require return to their sentencing courts.  As such, the prospect of ongoing material New York State criminal court proceedings suggests that this Court should refrain – and defendants will contend, abstain – from deciding the federal issues raised until the State law issues (which, as plaintiffs concede, give rise to the federal issues) are resolved.

## ARGUMENT

### POINT I

### THIS COURT SHOULD ABSTAIN FROM DECIDING THIS CASE UNDER THE *YOUNGER* AND *PULLMAN* ABSTENTION DOCTRINES

**A.    *Younger* Abstention Applies**

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that federal courts must abstain from enjoining a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate. "Younger involved a criminal judicial proceeding, but subsequent decisions have made clear that the same concerns of federalism and comity warrant abstention where state administrative disciplinary proceedings (like the one at issue here) are ongoing." Doe v. Connecticut, 75 F.3d 81, 85 (2d Cir. 1996). As the Supreme Court explained, "[t]he policies underlying Younger are fully applicable to noncriminal proceedings when important state issues are involved."  Middlesex County Ethics

Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

Under Younger, a would-be plaintiff who has been subjected to a state court proceeding must exhaust all available state appellate remedies.  Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). The fact that a constitutional issue (as framed by the federal courts) is not the direct subject of a state court proceeding, or that a plaintiff may not be vindicated on the particular constitutional claim that he raises in federal court, does not provide a plaintiff with independent grounds to pursue a separate federal case: "it is sufficient under [Supreme Court precedent] that constitutional claims may be raised in state-court judicial review of the administrative proceeding.  Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 629 (1986).  See also Huffman, 420 U.S. at 608 (violation of obscenity laws; constitutionality may be raised in state court proceeding); Trainor v. Hernandez, 431 U.S. 434 (1977) (constitutionality of state lien without due process may be raised in state court proceeding).

In this case, plaintiffs have the opportunity to proceed in state court, through motions to their criminal sentencing courts, by direct appeal of determinations made by their sentencing courts, or through resort to filing CPLR Article 78 proceedings or Article 70 habeas corpus petitions (as did plaintiffs Smith, Province and Ramos), to vindicate their rights.  Plaintiffs have the opportunity to petition the New York Supreme Court for judicial review of their detention on constitutional and other grounds.  Indeed, should the Court of Appeals reiterate its holdings that errors in sentencing criminal defendants to  postrelease supervision are to be resolved in the criminal sentencing courts, plaintiffs will be required to return to the State courts, notwithstanding any decision by a federal court.  Moreover, and most significantly, plaintiff Morales has an ongoing state habeas corpus proceeding pending in Bronx County Supreme Court.  See Meier Aff., at ¶4.  Accordingly, Younger abstention should apply, and the case should be dismissed.

In this case, the three prerequisites for abstention discussed above are present.  First, plaintiff Morales has a criminal proceeding (see People v. Morales, Kings County Indictment No. 2808-99 and 4808-98) (see Complaint, p. 12).  Like People v. Boyd,  People v. Louree held that a criminal

defendant may prevail upon the inherent powers of the courts to redress alleged infirmities in his criminal sentence even after significant time has elapsed.  Moreover, plaintiff Morales and the other putative plaintiffs have avenues of relief in the State courts through Article 78 and Article 70, which avenues plaintiffs Smith, Province, and Ramos availed themselves of.  Further, DOCS will be bound by the decision in Garner, now before the Court of Appeals, such that there is an "ongoing" state proceeding which provides a basis for invoking abstention.. See, e.g., Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 433-34 (1982) (applying Younger to state proceedings).

Second, the substantial state interest necessary to invoke the abstention doctrine is also present.  As plaintiffs' complaint itself reveals, postrelease supervision affects arguably hundreds of individuals and challenges the viability of applying a mandatory state sentencing scheme to protect the People of New York from violent felons who are released from prison and are attempting to re-adjust to society.  It cannot be questioned that the State of New York has a vital interest in preventing the sudden release of hundreds of violent felons from prison or from supervision by the Division of Parole until its own courts can determine the issues that allegedly compel the sweeping relief sought herein.

Third, a State court opportunity to vindicate federal rights is present here as well.  Plaintiff Morales and any other plaintiff, could have raised his challenge, as demonstrated by co-named plaintiffs Smith, Province and Ramos in state habeas corpus proceedings.  Plaintiffs cannot argue that there are not ample protections in State court.  Plaintiffs cannot be heard to argue that the New York State Courts will not address their issues in a fair manner.  See, e.g., University Club v. City of New York, 842 F. 2d 37, 40 (2d Cir. 1988) (where the three-part test is met, and where constitutional issues may be considered, abstention is required).  Moreover, much as the plaintiff in Earley found relief in the federal courts, plaintiff could likewise have availed himself of the federal habeas corpus statute, to the extent, as the Second Circuit recognized, he had exhausted his State remedies.  Plaintiffs' complaint here simply circumvents  relief provided plaintiffs by both State and federal statutes and courts.  It is thus apparent that there are ample State court avenues (and other

federal avenues) for plaintiffs.   Notions of comity and federalism compel the conclusion that the State courts are competent to hear and fully resolve plaintiffs' constitutional challenge. "[T]here is no reason to assume that .. [plaintiffs'] constitutional rights will not be protected by the Appellate Division ..., or, if further review becomes necessary, by the New York Court of Appeals." Erdmann v. Stevens, 458 F. 2d 1205, 1211 (2d Cir. 1972).

Under Younger, a would-be plaintiff who has been subjected to a state court proceeding must exhaust all available state appellate remedies.  Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975). The fact that a constitutional issue may not be the direct subject of a state court proceeding, or that a plaintiff may not be vindicated on the particular constitutional claim that he raises in federal court, does not provide a plaintiff with independent grounds to pursue a separate federal case: "it is sufficient under [Supreme Court precedent] that constitutional claims may be raised in state-court judicial review" of the state proceeding.  Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 629 (1986).  See also Trainor v. Hernandez, 431 U.S. 434 (1977) (constitutionality of state lien may be raised in state court proceeding).

Plaintiff cannot establish any bad faith exception to Younger abstention.  The burden of establishing the exception is on the party seeking to avoid application of the abstention doctrine. Diamond "D", 282 F. 3d at 198-99 (citation omitted).  For bad faith to exist, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." Cullen, 18 F. 3d at 103. "To invoke this exception, the federal plaintiff must show that [a] state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Diamond "D", 282 F. 3d at 199.  Because abstention under Younger is appropriate here, this action should be dismissed. "Younger v. Harris contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." Gibson v. Berryhill, 411 U.S. 564, 577 (1973). "[W]hen Younger applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." Diamond "D", 282 F.3d at 197.  See also Inman v. Harder, 2007 U.S. Dist. LEXIS 45260 (N.D.N.Y. 2007).

B.     *Pullman* **Abstention Should Apply**

Even if Younger abstention does not apply to this case, the Court should apply the Pullman abstention doctrine and require plaintiffs to litigate their claim in State court first. Under the Pullman doctrine, a federal court may abstain from deciding a case "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).

In the Second Circuit, Pullman abstention may be appropriate when (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid or modify the federal constitutional issue." Greater New York Metro. Food Council v. McGuire, 6 F.3d 75, 77 (2d Cir.1993). This case satisfies all three requirements for Pullman abstention. Plaintiffs complain that the statute violates the Due Process Clause's guarantees with respect to sentencing expectations, while the Court of Appeals of New York State has defined the due process problem as one implicated during plea negotiations. This Court should abstain in order to permit the Court of Appeals to speak on the issue.

The Court of Appeals has never spoken on the applicability of Earley v. Murray. Earley is not controlling in the Court of Appeals.[5] That postrelease supervision attaches at the plea is current New York State law. Earley did not have the benefit of Hill when the Second Circuit addressed the issue. The federal courts must "defer to the judgment of the state court unless the state court determination constitutes an 'unreasonable application' of clearly established federal law as determined by the Supreme Court." See Brown v. Costello, 2003 WL 118499 (S.D.N.Y. 2003). It is also axiomatic that New York State courts have not found federal case law controlling, absent a clear direction from the United States Supreme Court. See People v. Andra Handre, et al., 94 Misc.

---

[5] Earley can also be distinguished from the much-vaunted Wampler decision. Wampler involved an aggressive clerk who imposed a penalizing fine in the clerk's discretion. Earley involves a State agency attempting to comply with legislative mandate in the face of judicial error. The two cases are quite inapposite, and the Office of the Attorney General contends that Earley was wrongly decided.

2d 217 (Kings Cty. 1978), citing, New York R.T. Corp., v. City of New York, 275 N.Y. 258 (1937), aff'd, 303 U.S. 573 (1938). Indeed, "[i]t is axiomatic, however, that when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes. See, e. g., Bush v. Palm Beach County Canvassing Bd., 531 U.S. 70, 76 (2000) (per curiam) ( "As a general rule, this Court defers to a state court's interpretation of a state statute." ); Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 119 (2d Cir. 2001) (noting that "we must defer to the [state] [s]upreme [c]ourt on issues of state law "). The Second Circuit has affirmed that "[w]e are thus guided not only by the language of the statute itself but also by New York courts' interpretation of the statute." U.S. v. Fernandez-Antonia, 278 F.3d 150 (2d Cir. 2002). The Second Circuit may well have to revisit Earley should the New York State Court of Appeals refine its definition of State sentencing or procedural law. Certainly, in the federal habeas corpus context, '[u]nder established federal habeas principles,' federal courts must defer to state court determinations on issues of state procedural law." Merriweather v. Mitchell, 1993 U.S. Dist. LEXIS 5213, *3 (S.D.N.Y. Apr. 21, 1993) (citing Maula v. Freckleton, 972 F.2d 27, 28 (2d Cir. 1992)). The Second Circuit itself has held that "[i]n determining whether a petitioner was entitled to a defense under state law, federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." Davis v. Strack, 270 F.3d 111 (2d Cir. 2001) (emphases added). Plaintiffs' reliance on Earley could very well be further undermined by the impending Court of Appeals decisions. In the alternative, should the Court of Appeals adopt Earley and its progeny, the need for any further litigation on this issue may be eliminated altogether.

This Court in determining plaintiffs' claims will be required to interpret State law. The Court will have to determine not only whether the error at sentencing is one involving the plea or the sentencing expectations of criminal defendants, and will be required to determine whether the postrelease portion of a sentence can be commuted, as if it were a nullity (as plaintiffs would argue), or whether it should be calculated into the sentence upon return to the sentencing court. This is not a case in which plaintiffs raise an arguable facial challenge to the State's statute. Instead, plaintiffs

complain about the statute's applicability to them as criminal defendants, without ever having pursued state remedies to determine whether or to what extent errors in the application of the statute should be addressed.

In these circumstances, <u>Pullman</u> abstention is warranted.

**C.    Abstention Under <u>Colorado River v. U.S.</u> Warrants Dismissal of this Action**

If this Court finds that it has jurisdiction here, notwithstanding the <u>Younger</u> doctrine, the Supreme Court has still held that abstention may be appropriate in cases that do not fit neatly within the traditional abstention doctrines set forth above.  <u>See Colorado River v. U.S.</u>, 424 U.S. 800, 817-18 (1976); <u>DeCisneros v. Younger</u>, 871 F.2d 305, 307 (2d Cir.1989).   Abstention under <u>Colorado River</u> applies where, as here, "state and federal courts exercise concurrent jurisdiction simultaneously." <u>Burnett v. Physician's Online, Inc.</u>, 99 F.3d 72, 76 (2d Cir.1996). To determine propriety of abstention under <u>Colorado River</u>, a district court is required to weigh several factors, including jurisdiction of the court over the relief requested (here, essentially habeas corpus relief), the avoidance of piecemeal litigation, the order in which jurisdiction was obtained, whether state or federal law supplies the rule of decision, and whether a state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction (as, for example, plaintiffs Smith, Province and Ramos availed themselves of State court proceedings which adequately protected their rights).  <u>See Burnett</u>, 99 F.3d at 76.  No single factor is necessarily decisive, <u>see DeCisneros</u>, 871 F.2d at 307, and the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." <u>Moses H. Cone v. Mercury</u>, 460 U.S. 1, 16 (1983).

Review of these factors compels the conclusion that this Court alternatively should abstain from hearing this case under <u>Colorado River</u>, either by dismissing it or staying the action, pending the outcome of State court proceedings, on the grounds that the applicability of Penal Law §70.45 has not yet been definitively addressed by the New York Court of Appeals and the State courts of New York can adjudicate the legal issues presented herein, with no reason to believe that the State courts will not protect plaintiff's rights adequately, not to mention the fact that the criminal court

proceedings of all of the putative plaintiffs have been filed before this action and remain the principal

source for relief plaintiffs seek.[6]


**POINT II**

**PLAINTIFFS FAIL TO MEET THE STANDARD FOR AFFIRMATIVE INJUNCTIVE
RELIEF TO OVERTURN THE STATUS QUO**

Plaintiffs fail to meet the standard for preliminary injunctive relief.  A party seeking a

preliminary injunction "must show irreparable harm absent injunctive relief, and either a

likelihood of success on the merits, or a serious question going to the merits to make them a fair

ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor."  Louis

Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 113-14 (2d Cir. 2006).  A plaintiff

who seeks an injunction "alter[ing], rather than maintain[ing], the status quo," must meet the

more rigorous standard of demonstrating a "clear" or "substantial" showing of a likelihood of

success on the merits.  Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d

Cir. 1995).  As the argument in Point I above demonstrates, plaintiffs' likelihood of success is

not clear or substantial.

A preliminary injunction is "an extraordinary and drastic remedy . . . that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v.

Armstrong, 520 U.S. 968, 972 (1997).  See also General Textile Printing & Processing Corp. v.

Expromtorg Intern. Corp., 862 F.Supp. 1070, (S.D.N.Y.,1994) ("Grant of preliminary injunction

is extraordinary and drastic remedy which should not be allowed routinely").  Indeed, the Second

Circuit has also stated, "[i]nequitable conduct alone cannot justify the entry of a preliminary

---

[6]  Were plaintiffs to return to their sentencing courts for correction of the error in sentencing,
plaintiffs might lose the windfall gained if civil courts declare postrelease supervision "a nullity."

injunction."  Plaintiffs must demonstrate that they require immediate relief, and that they have

not delayed in seeking redress for the alleged wrongs against them.  The Second Circuit observed

that "[p]reliminary injunctions are generally granted under the theory that there is an urgent need

for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights,

however, tends to indicate at least a reduced need for such drastic, speedy action.  Although a

particular period of delay may not rise to the level of laches and thereby bar a permanent

injunction, it may still indicate an absence of the kind of irreparable harm required..." Firemen's

Ins. Co. of Newark, New Jersey v. Keating, 753 F.Supp. 1146, (S.D.N.Y.,1990.)  Plaintiffs could

have pursued their rights through many avenues in the State courts, and have deferred those

pursuits in favor of this attempt at broad injunctive relief.  Plaintiffs' failures to pursue the State

remedies justifies denying their application here for injunctive relief.

       In this case, the plaintiffs are seeking to alter the status quo and therefore must meet the

more rigorous standard.  Indeed, because plaintiffs here "seek[] a preliminary injunction that will

affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme,

the injunction should be granted only if the moving party meets the more rigorous

likelihood-of-success standard.'" No Spray Coalition, Inc. v. City of New York, 252 F.3d 148,

150 (2d Cir. 2001) (quoting Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999)).  As set forth below

in Points III and IV, and as referred to in footnote 8, below, plaintiffs' complaint will be

dismissed as barred by Heck v. Humphrey, and by the doctrines of qualified immunity and

(arguably) of collateral estoppel and res judicata,   Because plaintiffs' complaint should be

dismissed on its face on multiple grounds, plaintiffs cannot demonstrate a likelihood of success.

       Plaintiffs' motion for injunctive relief should also be denied for their failure to

demonstrate irreparable harm if an injunction does not issue.  Irreparable harm exists where, "but

for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." <u>Brenntag Int'l Chems. Inc. v. Bank of India</u>, 175 F.3d 245, 249 (2d Cir. 1999). "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." <u>Rodriguez v. DeBuono</u>, 175 F.3d 227, 234 (2d Cir. 1998) (internal citations and quotations omitted); <u>see also</u> <u>Reuters, Ltd. v. United Press Int'l, Inc.</u>, 903 F.2d 904, 907 (2d Cir. 1990). Plaintiff Morales, has taken steps to address his complaints in the State courts, and should not now be heard to argue that this Court's injunction is necessary at this time. He certainly cannot show at this time any possibility that he will be irreparably harmed (unless this Court grants him immediate relief) - his relief may very well be on the way. The obvious risk of releasing hundreds of violent felons from their supervision or incarceration by the State does not justify granting plaintiffs blanket relief they could seek and obtain individually in certain State court proceedings. The People, should the injunction issue, would obviously not be able to return to the status quo if, at the end of this litigation, plaintiffs were not to prevail and would be directed by this Court to return to their supervision or incarceration. Any balancing of hardships tips in favor of defendants and the People of New York, with their interest in keeping violent felons under supervision or otherwise in custody. Thus, without a showing of irreparable injury, and because plaintiffs cannot demonstrate a likelihood that they will prevail in their claims, any preliminary injunctive relief should be denied.

## POINT III

## <u>PLAINTIFFS' CLAIMS ARE NOT COGNIZABLE UNDER §1983</u>

As argued above, plaintiffs' claims are barely disguised claims for habeas corpus relief, and

not claims that give rise to Section 1983 claims.  Plaintiffs' very motion for injunctive relief in the form of release from prison or release from the requirements to report to state parole supervision is a thunderous announcement that habeas corpus, and not Section 1983, is implicated.  The courts have long held that where plaintiffs complain about their confinement in prison or the duration of their sentence, Section 1983 is not the appropriate avenue for relief, and any such complaint under 42 U.S.C. §1983 should be dismissed.  In Gastelu v. Breslin, for example, an Eastern District court held that where "prisoners challenged the deprivation of good-time credits as a result of disciplinary proceedings, and sought injunctive relief to compel restoration of the credits, which in turn would result in their release from confinement[,]" the challenge was essentialy so "close to the core of habeas corpus [that it was] an attack on the prisoner's conviction," and should be heard as a habeas corpus petition.  The court held that the claims there went "directly to the constitutionality of [plaintiff's] physical confinement itself and [sought] either immediate release from that confinement or the shortening of its duration." Gastell v. Breslin, 2005 WL 2271933 (E.D.N.Y.,2005); citing, Preiser v. Rodriguez, 411 U.S. 475, 476-77, (1973);  see also Wilkinson v. Dotson, 544 U.S. 74 (2005) (Scalia, J. concurring) ("[Preiser] and the cases that follow it hold that Congress, in enacting § 1983, preserved the habeas corpus statute as the sole authorization for challenges to allegedly unlawful confinement."  No injunction from this Court should therefore issue as the sole injunctive relief sought is wrapped up in a challenge to the fact or duration of their confinement.  The Second Circuit has held that "when a prisoner is challenging 'the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.'" Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006).  Plaintiffs' Section 1983 claim for injunctive relief should be denied.

Beyond plaintiffs' claims for injunctive relief (which should be denied), the rest of plaintiffs' Section 1983 complaint should be dismissed.  No plaintiff can demonstrate that the ultimate State court authority has overturned their sentences.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus….A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.  Thus, when a prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." <u>Heck</u>, 512 U.S. at 486 – 487 (emphasis in original).  Additionally, "[e]ven a prisoner who has fully exhausted available state remedies has no cause of action under §1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." <u>Id.</u> at 489.

The <u>Heck</u> Court's conclusion was based upon "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." <u>Heck</u>, at 486; <u>see</u> <u>Wallace v. Kato</u>, 127 S. Ct. 1091 (2007).  The Court also stated that, "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of §1983." <u>Heck</u>, at 482 (quoting <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 490(1973)).

While §1983 does not contain a judicially imposed exhaustion requirement, absent some other bar to the suit, a claim either is cognizable under §1983 and should immediately go forward, or is not cognizable and should be dismissed. Edwards v. Balisok, 520 U.S. 641, 649 (1997); See Heck, 512 U.S. at 481, 483.

"The purpose of the Heck favorable termination requirement is to prevent prisoners from using §1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition." Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006).

Injunctive relief "tantamount to seeking relief from confinement" is barred by the Supreme Court's decision in Preiser v. Rodriguez. See 411 U.S. 475, 487-90, 500 (1973) (holding that a state prisoner challenging a state conviction or sentence, or the fact or duration of confinement and seeking immediate or speedier release, must do so by petition for writ of habeas corpus after exhausting state remedies); see also Jenkins v. Haubert, 179 F.3d 19, 24 (2d Cir. 1999) ("The Supreme Court held in Preiser that, for those cases at the heart of habeas corpus--those in which a prisoner challenges the fact or length of his confinement--habeas is the exclusive federal remedy, at least where the prisoner seeks an injunction affecting the fact or length of his incarceration"). Murphy v. Travis, 36 Fed. Appx. 679 (2d Cir. 2002).

A habeas petitioner need not be confined physically to satisfy the "in custody" requirement. Maleng v. Cook, 490 U.S. 488, 491, 104 L. Ed. 2d 540, 109 S. Ct. 1923 (1989)(per curiam). All petitioners whose convictions cause them to suffer substantial restraints not shared by the public generally come within the statute's purview, and parole has long been held to constitute such a restraint. See Jones v. Cunningham, 371 U.S. 236, 242-43, 9 L. Ed. 2d 285, 83 S. Ct. 373 (1963);

Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994); DePompei v. Ohio Adult Parole Auth., 999

F.2d 138, 140 (6th Cir. 1993). As plaintiff Morales is in custody, and remains subject to postrelease

supervision, he is "in custody" under § 2254(a). Velez v. New York, 941 F. Supp. 300 (E.D.N.Y.

1996). Indeed, "[f]ederal courts have held that Heck applies to Section 1983 actions that challenge

the fact or duration of confinement based on the revocation of parole." Davis v. Cotov, 214 F. Supp.

2d 310, 316 (E.D.N.Y. 2002). It is clear that all plaintiffs, except for plaintiffs Smith, Province and

Ramos at this time, are challenging the validity of their confinement and must therefore proceed

pursuant to the federal habeas corpus statute and their available state court remedies.


**POINT IV**

**PLAINTIFFS' SUIT IS BARRED BY QUALIFIED IMMUNITY**

Defendants are entitled to qualified immunity, at the very least, and thus any complaint

seeking damages must be dismissed. Given the unsettled state of federal and state law on

postrelease supervision, it is reasonable for defendants to believe that enforcement of a

mandatory sentencing statute, notwithstanding the judiciary's errors, is reasonable and not a

violation of clearly established precedent. Although plaintiffs argue that Earley clearly

establishes their rights, it is certainly reasonable for individuals to disagree with Earley and to

find the Second Circuit precedent inapplicable to other cases (as did the Judges of the Court of

Appeals). Imputing ill motives to defendants grossly overstates plaintiffs' arguments. Even the

district court in Earley questioned the validity of the Second Circuit determination that due

process is implicated as a matter of State sentencing law. See Earley v. Murray (2007 WL

1288031 (E.D.N.Y. May 1, 2007) (District Judge Korman)).

Moreover, Earley was a federal habeas corpus action in which the federal courts

recognized that the petitioner was required, as plaintiffs should be required here, to return to the State sentencing court.   The district court, on remand, recognized that as a reasonable approach and held that the petitioner there was required to return to his sentencing judge.[7]  While petitioner Earley did not get the relief in State court given the state of the law at that time, the circumstances of <u>Earley</u> do not mean that plaintiffs cannot here find their relief in New York State courts.  Neither the <u>Earley</u> court nor any other court has found Penal Law §70.45 unconstitutional.  Thus, DOCS and its individual employees remain bound to enforce its provisions.  Plaintiffs cannot expect a New York State agency to flout State legislative mandates as if it had discretion to comply with some laws and not others.  Even if clearly established as applicable to this situation, <u>Wampler</u> can reasonably be read as inapplicable to postrelease supervision, as the Court of Appeals of New York has obviously found to date.  Accordingly, qualified immunity certainly attaches to defendants.

Qualified immunity will terminate a lawsuit at the earliest possible stage.   <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987)   "[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigations will unduly inhibit officials in the discharge of their duties.  Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  <u>Id</u>.  "There are two ways government officials can show they

---

[7] <u>Earley v. Murray</u> (2007 WL 1288031 (E.D.N.Y. May 1, 2007)) held on remand that the remedy is to stay an order for release in order to allow the sentencing court to correct the illegal sentence.  The inherent powers of the New York judiciary can solve the problem, instructed Judge Korman. The New York State Court of Appeals has held similarly.

are entitled to qualified immunity arising from their discretionary actions.  First, they are immune from liability if their conduct does not violate 'clearly established' statutory or constitutional rights the existence of which a reasonable person would have known."  <u>Moore v. Vega</u>, 371 F.3d 110, 114 (2d Cir. 2004) (internal citations omitted).  "Second, government officials will be immune if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time.  That is to say, government officials enjoy immunity from liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  <u>Id</u>. (citing <u>Anderson</u>, 483 U.S. at 638).  Here, the individual defendants cannot be said to have disregarded clearly established precedent; rather, they have followed the mandates of the Court of Appeals and the New York State Legislature.

The New York State Court of Appeals has repeatedly held that postrelease supervision is a direct consequence of a criminal conviction as it has a "definite, immediate and largely automatic effect on [a] defendant's punishment."  See <u>People v. Catu</u>, 4 N.Y.3d 242 (2005); <u>People v. Van Deusen</u>, 7 N.Y.3d 744 (2006); <u>People v. Louree</u>, 8 N.Y.3d 541 (2007); <u>People v. Hill</u>, 9 N.Y.3d 189 (2007).  In both <u>Catu</u> and <u>Hill</u> the defendants' sentencing courts were silent regarding postrelease supervision and so DOCS calculated the terms of postrelease by following Penal Law §70.45.  The Court of Appeals held, in both cases, that Catu and Hill were entitled to have their pleas vacated because the defendants were not informed that they would be subject to postrelease supervision.  The silence of the sentencing courts was irrelevant because DOCS was required to assess the postrelease supervision pursuant to Penal Law §70.45(2).  Thus, if DOCS were precluded from assessing postrelease supervision without specific direction by the court, there would have been no basis for the Court of Appeals to grant plea vacatur to Catu and Hill.

DOCS is located in Albany, New York, which sits within the jurisdiction of the Third

Department of the New York State Supreme Court, Appellate Division. Up until December 2007, caselaw in the Third Department held that when a defendant was "sentenced to a determinate sentence for his commission of a violent felony . . . 'a period of postrelease supervision [was] automatically included' in his sentence by statute. <u>Matter of Deal v Goord</u> (8 A.D.3d 769, 778 N.Y.S.2d 319 [2004], *appeal dismissed* 3 N.Y.3d 737, 820 N.E.2d 293, 786 N.Y.S.2d 814 [2004]) (internal citations omitted); <u>Matter of Garner v. New York State Dept. of Correctional Servs.</u>, 39 A.D.3d 1019, 831 N.Y.S.2d 923 (3rd Dept. 2007) ("respondents are only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute"). Therefore, since DOCS was merely "enforcing a statutorily-required part of petitioner's sentence, they ha[d] not performed any judicial function, making prohibition an unavailable remedy." <u>Id.</u> <u>Garner</u> and <u>Deal</u> were not overturned by the Third Department until December 27, 2007. <u>See</u> <u>Matter of Quinones v. New York State Dept. of Correctional Servs.</u>, 46 A.D.3d 1268 (3rd Dept. 2007); <u>Matter of Dreher v. Goord</u>, 46 A.D.3d 1261, 848 N.Y.S.2d 758 (3rd Dept. 2007). Therefore, relying on precedent from the New York State Court of Appeals and the Appellate Division, Third Department, it was clearly objectively reasonable for defendants herein to believe their actions were lawful.

Accordingly, the complaint cannot succeed for money damages against any defendant, and thus plaintiffs are not likely to succeed on the merits.[8] Injunctive relief should be denied.

---

[8] Defendants also contend that the doctrines of <u>res judicata</u> or collateral estoppel apply to bar, in whole or in part, the claims of plaintiffs and that the plaintiffs' claims may be barred by applicable statutes of limitations. This Office reserves all rights to assert these and any other defenses when defendants are served with the complaint, request representation, to the extent that the complaint is not here dismissed on abstention grounds.

## CONCLUSION

For all of the foregoing reasons, the Court should abstain from entertaining plaintiffs'

complaint at this time, and otherwise deny plaintiffs' application for injunctive relief.

Dated:  New York, New York
        April 18, 2008

                                        Respectfully submitted,

                                        ANDREW CUOMO
                                        Attorney General of the
                                         State of New York
                                        Attorney for Defendants


                                By:     _____s/ Michael J. Keane___
                                        Michael J. Keane
                                        Andrew Meier
                                        Assistant Attorneys General
                                        120 Broadway - 24th Floor
                                        New York, New York 10271
                                        (212) 416-8550


        Damian Noto
        Law Intern
        On the Brief